IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| GENOVEVO P. DELAROSA | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Case No. 4:11CV384 |
| | § | |
| CITIFINANCIAL, INC., ET AL. | § | |
| | § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Now before the Court is Defendants' Motion to Compel Arbitration (Dkt. 12). As set forth below, the Court finds that the motion should be GRANTED.

### BACKGROUND

This suit stems from Plaintiff's purchase of furniture from Rooms to Go. In his Amended Complaint Plaintiff alleges:

> Plaintiff purchased furniture at Rooms to Go. On information and belief, the furniture was backdoor financed by Defendant Citi via an unsecured, closed ended credit account. When said credit account was opened at Rooms to Go, it was given an account number ending in 8397, but that account number was later converted by Citi to a new account number ending in 5846.

Dkt. 8 at ¶7.

Plaintiff then alleges that a dispute subsequently arose between him and Citi as to the balance due on his account, causing Plaintiff to retain counsel to assist in resolution, and ultimately resulting in an agreement to settle the matter. Plaintiff claims that his counsel verified that the account number that was the account ending in 5846, which, Plaintiff's counsel was told, had been converted

1

from the account ending in 8397. Plaintiff alleges that after paying the full settlement amount, he continued to receive collection notices on the Citi account, ultimately resulting in additional income tax liability and continued reports of "bad debt" on his credit report. *See* Dkt. 8.

In this case, Plaintiff asserts claims under the Fair Debt Collection Practices Act and the Texas Debt Collection Practices Act, and claims for Unreasonable Collection Efforts, Breach of Contract or, in the Alternative, Fraudulent Inducement and Common Law Fraud, and Intrusion Upon Seclusion/Invasion of Privacy. Plaintiff references and attaches a one-page Finance Application to the Amended Complaint. *See* Dkt. 8-1.

Defendants argue in response that Plaintiff is bound to arbitrate his claims under the terms of the Finance Application and other related documents. Specifically, Defendants allege that on April 9, 2003, Plaintiff entered into a credit transaction with CitiFinancial, resulting in a Finance Application, Revolving Credit Agreement and Disclosure Statement. The Finance Application was signed[1] by Plaintiff and contains the following language:

> 9. THE ATTACHED AGREEMENT CONTAINS PROVISIONS REQUIRING ARBITRATION OF VARIOUS CLAIMS AND CONTROVERSIES.
>
> BY YOUR SIGNATURE BELOW, YOU ACKNOWLEDGE THAT YOU HAVE READ AND RECEIVED A COPY OF THE AGREEMENT BEFORE MAKING ANY PURCHASES UNDER THIS ACCOUNT AND THAT NO PERSON HAS ASSISTED YOU IN ARRANGING THIS FINANCING.

---

[1] The Court notes that this signature is not dated, however, Defendants have submitted an affidavit from a manager at Citi stating that this application was executed on or about April 9, 2003. *See* Dkt. 21-1. Although Plaintiff claims he only purchased furniture in 2006, Plaintiff has offered no credible evidence to contest this date, therefore, the Court will presume this to be the date of execution. Regardless of the factual background of the case, however, Plaintiff has not contested his signature on these documents – all of which contain language regarding the applicable arbitration provision.

2


Dkt. 12-1 at 2.

The Finance Application also provides that "[i]f this application is approved you agree to all the terms and conditions of the attached Agreement (Form 23126 (12/02)), which are incorporated herein by reference." Dkt. 12-1 at 2.

The attached Form 23126 (12/02) – as indicated by the footer – is titled "Revolving Credit Agreement and Disclosure Statement." It contains an arbitration provision which provides, in part:

> [A]ll claims or controversies between you and us (or the other persons and entities described below) based upon, arising under, or in connection with this Agreement shall be resolved by binding arbitration. This includes (but is not limited to) any claim or controversy relating to your Account or services that we or our affiliates offer in connection with this Agreement; any violation of any federal, state or local statute, rule, regulation, ordinance, or common law; or any claim or controversy involving or against any of our affiliates, successors or assigns and our and their officers, employees or agents. This arbitration provision is governed by the Federal Arbitration Act....

Dkt. 12-1 at 6, ¶ 27.

On November 12, 2006, Plaintiff also executed a Rooms to Go Credit Application containing the following language: "7. Paragraph 27 of the Agreement contains provisions regarding arbitration of various claims and controversies." Dkt. 12-2 at 1. The application lists Plaintiff as having an existing account, and, according to Defendant, this application was completed to increase Plaintiff's credit limit from $5,500 to $7,000.

In response to Defendants' motion to compel arbitration, Plaintiff argues that the Rooms to Go Credit Application/Agreement is legally irrelevant and purely evidentiary for the purposes of his lawsuit. Plaintiff further contends that he did not receive a copy of the terms and conditions when he applied for this credit agreement with Rooms to Go. Plaintiff finally argues that he did not sign

the Revolving Credit Agreement portion of the form seeking the Citi Platinum Select Mastercard and that he was not granted such revolving credit account with Citi.

## ANALYSIS

The Federal Arbitration Act (FAA) "is a congressional declaration of liberal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Section 3 of the FAA, 9 U.S.C. § 3, provides for a mandatory stay of legal proceedings whenever the issues in a case are within the reach of an arbitration agreement. *Midwest Mech. Contractors Inc. v. Commonwealth Constr. Co.*, 801 F.2d 748, 751 (5th Cir. 1986).[2]

In ruling on a motion to compel arbitration and stay the underlying proceedings, a court must first determine whether there is a written agreement to arbitrate and then whether any of the issues raised are within reach of that agreement. *Complaint of Hornbeck Offshore (1984) Corp. v. Coastal Carriers Corp.*, 981 F.2d 752, 754 (5th Cir. 1993). In determining whether there is an agreement, a court may consider fraud relating to adoption of an arbitration provision but must leave to an arbitrator any issues of fraud relating to the agreement as a whole. *R.M. Perez & Assocs., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir. 1992).

---

[2] 9 U.S.C. § 3 reads:
> If any suit or proceeding brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement providing the applicant for the stay is not in default in proceeding with such arbitration.

Having reviewed the record herein, the Court finds that there is an agreement to arbitrate. Primarily and notably, Plaintiff attached to his original complaint filed in state court a copy of the Finance Application (*see* Dkt. 3, Ex. 1) – the first page of the Finance Application, Revolving Credit Agreement and Disclosure Statement. Although Plaintiff contends that he did not receive anything but the first page – which is disputed by Defendants – that single page references the attachment and specifically references the arbitration provisions. Although the font is not large, it is no smaller than the other font on the page and indeed is contained in the most conspicuous portion of the application, noted in bold and all caps. Moreover, Plaintiff signed another application to extend his credit limit in 2006, containing similar language regarding the arbitration provisions contained in Paragraph 27 of the Agreement. *See* Dkt. 12-2. Again, that language is in bold and the application cautions applicants to read the Agreement before signing. *Id.* In light of this documentary evidence, the Court finds that Plaintiff did enter into an arbitration agreement.

The Court is further not convinced by Plaintiff's argument that he is a Spanish speaker and therefore should not be bound by the terms of the Agreement. Plaintiff has offered no evidence in support of this contention, of his claim that he was confused by the Agreement, or of his claim that he did not receive all of the paperwork containing the arbitration provisions. Although it is sworn, Plaintiff's blanket verification attached to his sur-reply – stating that the facts in that pleading are true and correct to the best of his recollection and indicating that his primary language is Spanish – lacks the specificity to show that *at the time he signed both agreements* he did not understand them and did not have them translated or explained.[3]  *Cf. Prevot v. Phillips Petroleum Co.*, 133 F. Supp.

---

[3] *See* Dkt. 22 at 12.

2d 937, 940 (S.D. Tex. 2001) (finding arbitration agreements unconscionable where Plaintiffs presented sworn affidavits that they could not read English, that the documents were not translated for them, and that they were pressured into signing them). He signed an agreement in English in 2003 and returned to sign another one in 2006, and, absent allegations of duress or fraud, he will be bound accordingly. There is simply no evidence on the record here of unconscionability. For these reasons, the Court is equally unconvinced that JAMS Minimum Standards of Procedural Fairness have been violated such that it would be impossible to hold an arbitration before JAMS as the provision requires.[4]

Having found that Plaintiff did enter into an arbitration agreement with Citi, the Court next determines whether that provision is otherwise enforceable. "Given the fundamental principle that arbitration is a matter of contract, to determine whether an agreement to arbitrate is valid, courts apply ordinary state-law principles that govern the formation of contracts." *Carey v. 24 Hour Fitness, USA, Inc.*, __ F.3d __, 2012 WL 205851, *2 (5th Cir. 2012).

Plaintiff argues that the arbitration provision is unenforceable because it allows Citi to unilaterally amend the agreement. The Revolving Credit Agreement and Disclosure Statement contains the following provision:

> 13. CHANGE IN TERMS: To the fullest extent permitted by applicable law, we may, at any time, and from time to time, amend this Agreement in any respect. Without limiting the foregoing, such amendment may change the terms by the addition of new terms or by deletion or modification of then-existing terms, whether relating to…..the manner for amending the terms of this Agreement, arbitration or other alternative dispute resolution mechanisms, and/or other matters of any kind whatsoever..."

---

[4] Any other of JAMS' procedural limitations or requirements identified by Plaintiff are better addressed by JAMS than this Court.

Dkt. 12-1 at 4, ¶ 13.

Plaintiff is right that, under Texas law, an arbitration clause which grants one party the unilateral right of amendment or termination may be illusory, even with notice to the other party. *See Carey*, 2012 WL 205851; *but see Wynne v. American Exp. Co.*, 2010 WL 3860362, 8 (E.D. Tex. 2010) (in Texas, "adhesion contracts with arbitration clauses are not automatically unconscionable"). However, the Revolving Credit Agreement and Disclosure Statement provides that Delaware law applies. Dkt. 12-1 at 6, ¶ 26.[5]

In language which in essence tracks the language of the Change In Terms provision here, Delaware statutory regulations governing revolving credit accounts provide in part:

> Unless the agreement governing a revolving credit plan otherwise provides, a bank may at any time and from time to time amend such agreement in any respect, whether or not the amendment or the subject of the amendment was originally contemplated or addressed by the parties or is integral to the relationship between the parties. Without limiting the foregoing, such amendment may change terms by the addition of new terms or by the deletion or modification of existing terms, whether relating to plan benefits or features, the rate or rates of periodic interest, the manner of calculating periodic interest or outstanding unpaid indebtedness, variable schedules or formulas, interest charges, fees, collateral requirements, methods for obtaining or repaying extensions of credit, attorney's fees, plan termination, the manner for amending the terms of the agreement, ***arbitration or other alternative dispute resolution mechanisms***, or other matters of any kind whatsoever....

DEL. CODE ANN. tit. 5 § 952(a) (emphasis added).

---

[5] Although Plaintiff cites to both Texas and Delaware law in his responsive pleadings, he has not argued that this choice of law provision is unenforceable. As such, Defendant having invoked that provision, the Court addresses Plaintiff's arguments under Delaware law.

Plaintiff has argued that this regulation does not apply to the provision at issue here because his account is not a revolving account, but a closed-ended credit account, to which a different set of statutory regulations apply. A "revolving credit plan" is defined as follows:

> (4) "Revolving credit plan" or "plan" means a plan contemplating the extension of credit under an account governed by an agreement between a bank and a borrower pursuant to which:
>
> a. The bank permits the borrower and, if the agreement governing the plan so provides, persons acting on behalf of or with authorization from the borrower, from time to time to make purchases and/or to obtain loans by use of a credit device;
>
> b. The amounts of such purchases and loans are charged to the borrower's account under the revolving credit plan;
>
> c. The borrower is required to pay the bank the amounts of all purchases and loans charged to such borrower's account under the plan but has the privilege of paying such amounts outstanding from time to time in full or otherwise in accordance with the agreement governing the plan; and
>
> d. Interest may be charged and collected by the bank from time to time on the outstanding unpaid indebtedness under such plan.

DEL. CODE ANN. tit. 5 § 941. And closed-ended credit is defined as credit that is not revolving credit. DEL. CODE ANN. tit. 5 § 961(3). Here, not only is the agreement at issue is called a *Revolving Credit Agreement*, but its provisions necessarily permit Plaintiff "from time to time to make purchases" and give him "the privilege of paying such amounts outstanding from time to time in full or otherwise in accordance with the agreement." DEL. CODE ANN. tit. 5 § 941; *See* 12-1.[6] That

---

[6] *See, e.g.,* "YOU HAVE THE RIGHT TO PAY IN ADVANCE THE FULL AMOUNT DUE...SERVICES CHARGES ... MAY BE CHARGED ON THE OUTSTANDING BALANCES FROM MONTH TO MONTH." 12-1 at 2. "If we approve your application to open an Account, we will extend credit so that you may purchase goods and services for personal, family and household purposes from merchants which honor the Card or your Account." 12-1 at

Plaintiff may have only intended to make a one-time purchase at Rooms to Go does not change the nature of the credit he requested be extended to him here. Therefore, the Court finds that Citi's rights to change the terms of the credit agreement did not render it illusory under Delaware law.

Next, the Court turns to whether Plaintiff's claims in this suit fall under the arbitration agreement. When determining whether an issue is within reach of a written agreement to arbitrate, the Fifth Circuit distinguishes between broad and narrow arbitration clauses. *Hornbeck*, 981 F.2d at 754. If the clause is broad, the action should be stayed and the arbitrators allowed to determine whether the dispute falls within the clause. *Sedco v. Petroleos Mexicanos Mexican Nat'l Oil*, 767 F.2d 1140, 1145 n. 10 (5th Cir. 1985). If the clause is narrow, the court should not refer the action to arbitration or stay proceedings unless the court determines that the dispute falls within the clause. *Id*. However, "an order to arbitrate [a specific] grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650, 106 S. Ct. 1415, 1419, 89 L. Ed.2d 648 (1986).

Here, the arbitration provision provides for the arbitration of "all claims or controversies...based upon, arising under, or in connection with this Agreement includ[ing] (but is not limited to) any claim or controversy relating to your Account or services that we or our affiliates offer in connection with this Agreement; any violation of any federal, state or local statute, rule, regulation, ordinance, or common law; or any claim or controversy involving or against any of our affiliates, successors or assigns and our and their officers, employees or agents." Dkt. 12-1 at ¶27.

---

3, ¶1.

Here, Plaintiff has alleged that, after settlement of the amounts due under his account, Defendants have made wrongful collection attempts. Plaintiff's factual allegations are based on Citi's extension of credit to him and Defendants' conduct thereafter. The Court finds that they fall within the broad arbitration provision such that the case should be stayed and Plaintiff's claims referred to the arbitrator in their entirety.

Finally, the Court considers Plaintiff's arguments that his claims against Defendants DRS and/or Tate are not subject to the agreement because they were not signatories. In his amended complaint, Plaintiff alleges that "Defendant Citi retained Defendant Tate to continue collections on this account [and] was also attempting to collect for the alleged original balance," ¶18, and that "Defendant Citi engaged the debt collection services of Defendant DRS to collect Plaintiff's debt," ¶12.

Thus, according to Plaintiff's amended complaint, both Tate and DRS were retained by Citi to enforce Citi's rights and collect the amounts Citi claimed under the agreement. Because Tate and DRS were retained to collect a debt either on behalf of or instead of Citi, the Court finds that Tate and DRS both fall within the scope of "affiliates, successors or assigns" or "[Citi's] and their officers, employees or agents" as set forth in the arbitration provision. Dkt. 12-1 at ¶27.

Moreover, even if not expressly encompassed by the language of the agreement, the Court finds that DRS and Tate may invoke the provision based on the doctrine of equitable estoppel.

> [A non-signatory to invoke an arbitration agreement] when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the signatory and one or more of the signatories of the contract. Otherwise, the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor

10

of arbitration effectively thwarted.

*Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000) (quoting *M.S. Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)); *see also Washington Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 268 (5th Cir. 2004). Because the signatories to arbitration agreements have already agreed in writing to arbitration of claims relating to the agreement, it is foreseeable, and therefore reasonable, to broaden the scope of the arbitration agreement when signatories bring related claims against non-signatories. *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347, 361 (5th Cir. 2003). Here, Plaintiff's allegations in his complaint are made against "Defendants" collectively, making those claims interdependent and an arbitration without their participation would likely be rendered meaningless.[7]

The Court is sympathetic to Plaintiff as to the ever-evolving theories and assertions made by Defendants in their pleadings here. And the Court praises counsel for adeptly and thoroughly responding to each new argument thrown at her. However, the Court is obligated to review the record as a whole to determine whether there was an agreement to arbitrate and whether this dispute falls within it. Despite the various factual disputes remaining, it is clear to the Court that – as evidenced by the agreement relied upon in Plaintiff's own complaint – the parties agreed to have any disputes regarding the extension of credit (and consequently debt owed) handled in arbitration. There is simply not enough evidence here to show that Plaintiff did not understand what he agreed to do in the documents submitted by Defendants.

---

[7]Although it is not a factor in the Court's determination, the Court notes that ultimately Plaintiff will likely expend less resources if all of his claims are heard in one forum.

Therefore, the Court recommends that Defendants' Motion to Compel Arbitration (Dkt. 12) be GRANTED and that Plaintiff's claims against the Defendants be referred to arbitration and stayed until the arbitration has been completed.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 15th day of March, 2012.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE